UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOSHIK NADAV TYPOGRAPHY,<br><br>    *Plaintiff*,<br><br>  v.<br><br>BANANA REPUBLIC, LLC,<br><br>    *Defendant*. | Case No. 1:20-cv-8325-JMF |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
# MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

James D. Weinberger (*jweinberger@fzlz.com*)
Daniel M. Nuzzaci (*dnuzzaci@fzlz.com*)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
151 West 42nd Street, 17th Floor
New York, New York 10036
Tel: (212) 813-5900

*Attorneys for Defendant Banana Republic, LLC*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS .........................................................................................................2

I.      Factual Background .........................................................................................................2

II.     Procedural Background....................................................................................................4

ARGUMENT ..............................................................................................................................5

I.      Plaintiff Fails to State a Claim with Respect to Its Unfair Competition Claim ...................6

        A.      Plaintiff Fails to Plead Facts Sufficient to Show Ownership
                of a Valid and Protectable Mark ...........................................................................7

        B.      Plaintiff Fails to Plead Specific Facts Indicating Bad Faith ................................10

II.     Plaintiff's Claim Is Preempted by the Copyright Act......................................................14

CONCLUSION.........................................................................................................................16

{F4166375.2 }

# **TABLE OF AUTHORITIES**

## **CASES**

*Aerogroup International, Inc. v. Marlboro Footworks, Ltd.*,
  977 F. Supp. 264 (S.D.N.Y. 1997) ............................................................................................8

*Arrow Fastener Co. v. Stanley Works*,
  59 F.3d 384 (2d Cir. 1995)......................................................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................................5, 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................................5, 6

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*,
  70 F.3d 267 (2d Cir. 1995)......................................................................................................12

*Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.*,
  125 F.3d 28 (2d Cir. 1997)......................................................................................................13

*Dessert Beauty, Inc. v. Fox*,
  568 F. Supp. 2d 416 (S.D.N.Y. 2008).....................................................................................13

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010)......................................................................................................2

*EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.*,
  228 F.3d 56 (2d Cir. 2000)......................................................................................................13

*E. R. Squibb & Sons, Inc. v. Cooper Laboratories, Inc.*,
  536 F. Supp. 523 (S.D.N.Y. 1982) .........................................................................................12

*ESPN, Inc. v. Quiksilver, Inc.*,
  586 F. Supp. 2d 219 (S.D.N.Y. 2008)...................................................................................6, 7

*Easy Spirit, LLC v. Skechers U.S.A., Inc.*,
  19-CV-3299, 2021 WL 247922 (S.D.N.Y. Jan. 26, 2021) .....................................................12

*Empresa Cubana del Tabaco v. Culbro Corp.*,
  399 F.3d 462 (2d Cir. 2005)................................................................................................7, 10

*Eyal R.D. Corp. v. Jewelex New York Ltd.*,
  784 F. Supp. 2d 441 (S.D.N.Y. 2011).....................................................................................15

*Franklin v. X Gear 101, LLC*,
  17-CV-6452 (GBD)(GWG), 2018 WL 3528731 (S.D.N.Y. July 23, 2018),
  report and recommendation adopted, 2018 WL 4103492 (S.D.N.Y. Aug. 28, 2018) .............15

*In re LS&S Retail, Inc.*,
  Consol. Ser. No. 77524535, 2010 WL 4036046 (T.T.A.B. Sept. 30, 2010).......................8, 10

*LaChapelle v. Fenty*, 12 F. Supp. 2d 434 (S.D.N.Y. 2011) ............................................................6

*Maurizio v. Goldsmith*,
    96-CV-4332 (LMM), 2001 WL 1568428 (S.D.N.Y. Dec. 5, 2001) ................................. 15-16

*Midwest Railcar Corp. v. Everest Railcar Services, Inc.*,
    16-CV-0604 (AKH), 2017 WL 1383765 (S.D.N.Y. Apr. 13, 2017) .......................................12

*Mr. Water Heater Enterprises, Inc. v. 1-800-Hot Water Heater, LLC*,
    648 F. Supp. 2d 576 (S.D.N.Y. 2009) ....................................................................................12

*National Basketball Association v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997) .........................15

*OffWhite Productions, LLC v. Off-White LLC*, 480 F. Supp. 3d 558 (S.D.N.Y. 2020) ..................6

*ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996) .............................................................15

*Pulse Creations, Inc. v. Vesture Group, Inc.*, 154 F. Supp. 3d 48 (S.D.N.Y. 2015) ................6, 10

*Radio Channel Networks, Inc. v. Broadcast.Com, Inc.*,
    98-CV-4799 (RPP), 1999 WL 124455 (S.D.N.Y. Mar. 8, 1999),
    *aff'd*, 201 F.3d 432 (2d Cir. 1999) .........................................................................................14

*Universal City Studios, Inc. v. Nintendo Co.*,
    615 F. Supp. 838 (S.D.N.Y. 1985), *aff'd*, 797 F.2d 70 (2d Cir. 1986) ..................................14

*Universal Instruments Corp. v. Micro System Engineering, Inc.*,
    924 F.3d 32 (2d Cir. 2019) ............................................................................................... 6-7, 11

## STATUTES

15 U.S.C. § 1051 ...............................................................................................................................8

15 U.S.C. § 1052 ...............................................................................................................................8

15 U.S.C. § 1127 ...........................................................................................................................7, 8

17 U.S.C. § 101 *et seq* ....................................................................................................................14

17 U.S.C. § 301 ...............................................................................................................................14

New York General Business Law § 349 .......................................................................................1, 4

## REGULATION

37 C.F.R. § 202.1 ............................................................................................................................14

## RULE

Fed. R. Civ. P. 12 .....................................................................................................................1, 4, 5

## TRADEMARK MANUAL OF EXAMINING PROCEDURE

TMEP § 1202.03 ...............................................................................................................................8

Defendant Banana Republic, LLC ("Defendant") submits this memorandum of law in support of its motion to dismiss Plaintiff Moshik Nadav Typography's ("Plaintiff") Third Amended Complaint (ECF No. 28, "Third Amended Complaint" or "TAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The Third Amended Complaint is Plaintiff's *fourth* attempt to assert a legally sufficient pleading based on its unmerited claim that Defendant copied an ampersand design from one of Plaintiff's typefaces. In its most recent pleading, Plaintiff asserted claims for unjust enrichment, unfair competition, and deceptive business practices under New York General Business Law § 349. Following Defendant's motion to dismiss, the Court dismissed those claims pursuant to Fed. R. Civ. P. 12(b)(6) but gave Plaintiff leave to amend solely with respect to its claims for unfair competition and deceptive business practices. The Court also noted that this would be Plaintiff's last opportunity to amend its pleading to assert viable claims. The current iteration of Plaintiff's pleading – the Third Amended Complaint – asserts a single claim for unfair competition under New York common law but suffers from the same fatal deficiencies as its predecessor. Specifically, the unfair competition claim fails because Plaintiff has failed to plead (1) facts establishing ownership of a protectable mark and (2) that Defendant acted in bad faith, both of which are necessary elements for the claim. As a separate ground for dismissal, the Copyright Act of 1976 preempts state law claims involving the subject matter of copyright – even where that subject matter is excluded therefrom. As a result, preemption provides an additional ground for dismissal of the Third Amended Complaint.

Plaintiff has now had four chances to state a claim upon which relief may be granted and has failed to do so. Plaintiff has wasted the time and resources of Defendant and the Court

without regard to the law. Accordingly, this motion to dismiss should be granted, and the action should be dismissed with prejudice.

## STATEMENT OF FACTS

The following facts are taken either from the Third Amended Complaint or from materials referenced therein, which the Court may consider in adjudicating a motion to dismiss. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### I.     Factual Background

Plaintiff is a typography and graphic design business that creates typefaces and logotypes in digital formats. (TAC ¶ 10.) As part of its business, Plaintiff sells commercial and non-commercial licenses for its typefaces and logotypes to third parties through its Instagram page (@moshiknadavtypography) and e-commerce website (*https://moshik.net*). (*Id.* ¶ 12.)

In 2012, Plaintiff allegedly created a typeface font called "Paris Pro Typeface." (TAC ¶ 16.) One of the elements of the Paris Pro Typeface is a stylized ampersand (the "Paris Pro Ampersand"). (*Id.* ¶¶ 20-21.)

Plaintiff allegedly sells merchandise, including jewelry and apparel,[1] "prominently featuring the Paris Pro Ampersand." (TAC ¶ 24.) Jewelry featuring the Paris Pro Ampersand allegedly sold by Plaintiff utilizes the design as an ornamental pendant hanging from a necklace or chain. (TAC ¶ 25.) Posters allegedly sold by Plaintiff contain the Paris Pro Ampersand amongst various other ampersand stylizations, none of which are identical to the Paris Pro Ampersand. (*Id.*) Apparel featuring the Paris Pro Ampersand allegedly sold by Plaintiff depicts the design as a large ornamental graphic on the front of the apparel. (*Id.*)

---

[1] Despite Plaintiff alleging use of the Paris Pro Ampersand in connection with fashion apparel in the Third Amended Complaint (TAC ¶ 25), Defendant notes that a search of Plaintiff's e-commerce website and Instagram page do not reveal any such offerings for fashion apparel, including for those items identified in the Third Amended Complaint at Paragraph 25.

Defendant is an international specialty apparel company that offers apparel, accessories, and personal care products under the BANANA REPUBLIC brand. (TAC ¶ 29.) From time to time, Defendant has used a stylized ampersand (the "BR Ampersand Design") on its e-commerce website (*bananarepublic.gap.com*) and in social media posts in connection with the offering for sale of its goods and services. (TAC ¶ 30.) Some examples of Defendant's use of the BR Ampersand Design that were included in the Third Amended Complaint are reproduced and shown below:



(*Id.*) Defendant uses the BR Ampersand Design in a descriptive, non-trademark fashion – that is, as an ampersand meaning "and." (TAC ¶ 30.) For example, in the images shown above, the BR Ampersand Design is placed within the marketing materials to indicate to consumers that they may take "40% off" their purchase *and* an "extra 20% off" for selected items or that they may take "40% off" their purchase *and* this is a "special offer" for "today only." (*Id.*)  Defendant has

3

used the BR Ampersand Design solely in connection with its marketing and advertising materials and has never used the BR Ampersand Design on apparel or accessories. (TAC ¶¶ 30-36.)

Defendant has never contacted or sought permission from Plaintiff about using the BR Ampersand Design in Defendant's marketing and advertising materials nor has Defendant ever entered into a contract with or tendered payment to Plaintiff in connection with Defendant's use of the BR Ampersand Design. (TAC ¶¶ 29-41.)

## II.     Procedural Background

On October 6, 2020, Plaintiff commenced the above-captioned litigation by filing the Complaint (ECF No. 1, the "Complaint") and asserting a single cause of action for unjust enrichment based on Defendant's use of the BR Ampersand Design. (ECF No. 1 ¶¶ 38-41.)

In response to a *sua sponte* order issued by the Court regarding the sufficiency of Plaintiff's allegations for determining diversity, Plaintiff filed its First Amended Complaint (ECF No. 8, the "First Amended Complaint" or "FAC"). The First Amended Complaint was substantially identical to the originally-filed Complaint except for the addition of a single new allegation, which sought to address the Court's concern by identifying information about Defendant's parent company. (FAC ¶ 5.)

On December 9, 2020, Defendant filed its Motion to Dismiss the First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 14.)

On January 6, 2021, rather than oppose the motion to dismiss, Plaintiff filed the Second Amended Complaint ("ECF No. 20, the "Second Amended Complaint" or "SAC"), which asserted its original cause of action for unjust enrichment and two new causes of action for unfair competition under New York common law and deceptive business practices under New York General Business Law § 349. (SAC ¶¶ 39-53.) Because Plaintiff filed the Second Amended

4

Complaint, the Court denied as moot Defendant's Motion to Dismiss the First Amended Complaint. (ECF No. 22.)

On January 26, 2021, Defendant filed its Motion to Dismiss the Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 21.) The parties completed briefing on the motion to dismiss the Second Amended Complaint on February 16, 2021. (ECF No. 23-24.)

On June 10, 2021, the Court issued a Memorandum Opinion and Order granting Defendant's motion to dismiss the Second Amended Complaint in its entirety, but permitting Plaintiff leave to amend the complaint by re-pleading the unfair competition and Section 349 claims. (ECF No. 27, the "Order".) The Order further noted that "Nadav will not be given any further opportunity to amend to address the defects addressed in this Memorandum Opinion and Order." (*Id.* at 10.)

On July 1, 2021, Plaintiff filed the Third Amended Complaint, which asserts a single cause of action for unfair competition under New York common law. (TAC ¶¶ 42-62.)

## ARGUMENT

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In applying this standard, a court is to accept as true all well-pleaded factual allegations – though it should not credit "mere conclusory statements" or

"threadbare recitals of the elements of a cause of action." *Id*. That is, a plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully" and cannot rely on conclusions to support a claim. *Iqbal*, 556 U.S. at 678. If the plaintiff's pleadings "have not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Here, assuming all of the allegations in the Third Amended Complaint to be true, Plaintiff has failed to allege facts that would support a plausible claim for unfair competition. Thus, the Court should dismiss the Third Amended Complaint in its entirety.

**I.      Plaintiff Fails to State a Claim with Respect to Its Unfair Competition Claim**

Under New York common law, the elements necessary to prevail on a cause of action for unfair competition are identical to the elements for the federal Lanham Act claim of the same name. *See OffWhite Prods., LLC v. Off-White LLC*, 480 F. Supp. 3d 558, 563 (S.D.N.Y. 2020) (holding that elements for unfair competition under New York common law "mirror" Lanham Act claims); *Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 57 (S.D.N.Y. 2015) (same); *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 448-49 (S.D.N.Y. 2011) (same). Thus, in order to state a claim for unfair competition under New York common law, the plaintiff "must demonstrate that (1) it possesses a valid, protectable mark, and (2) that the result of the defendant's alleged use is a likelihood of confusion between the marks of the alleged infringer and the charging party." *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008) (citations and internal quotation marks omitted).

Furthermore, "[t]he essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another with some element of bad faith." *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 50-51 (2d Cir.

2019) (citation and internal quotation marks omitted). Thus, under binding Second Circuit precedent, "bad faith *must* be demonstrated for a claim of unfair competition under New York law." *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005) (emphasis added).

Because Plaintiff has failed to demonstrate ownership of a valid, protectable mark and has failed to allege specific facts to support a finding that Defendant acted in bad faith, Plaintiff has failed to state a claim for unfair competition under New York common law. Accordingly, the Third Amended Complaint should be dismissed in its entirety.

      A.      *Plaintiff Fails to Plead Facts Sufficient to Show Ownership of a Valid and Protectable Mark*

To state a claim for unfair competition under New York common law, the plaintiff "must demonstrate that . . . it possesses a valid, protectable mark . . . ." *ESPN*, 586 F. Supp. 2d at 230 (citations and internal quotation marks omitted). Plaintiff's unfair competition claim fails because the Third Amended Complaint contains no factual allegations demonstrating that Plaintiff owns a valid and protectable mark.

The Lanham Act defines a trademark as a "word, name, symbol, or device . . . used . . . *to identify and distinguish his or her goods*, including a unique product, from those manufactured or sold by others *and to indicate the source of the goods*." 15 U.S.C. § 1127 (emphases added). Plaintiff does not assert any factual allegations in the Third Amended Complaint to specifically demonstrate that it uses the Paris Pro Ampersand in the manner required to establish use as a mark, *i.e.*, to identify the source of its goods and services. While the Third Amended Complaint does include some conclusory assertions that the "Paris Pro Ampersand is [] the centerpiece of Nadav's brand identity" (TAC ¶ 23), that Plaintiff offers "apparel and accessories merchandise[] featuring the Paris Pro Ampresand" (TAC ¶ 25), and that Plaintiff "has invested considerable

resources advertising and promoting its services and merchandise under the distinctive Paris Pro Ampersand" (TAC ¶ 26), none of these allegations supports the proposition that Plaintiff claims trademark rights in the Paris Pro Ampersand or that consumers recognize the symbol as an exclusive indication of source rather than a mere design Plaintiff allegedly created and offers as a product *per se*. Plaintiff's failure to allege that the Paris Pro Ampersand is an exclusive identifier of source for its goods and services is fatal to its unfair competition claim.

In fact, the allegations that Plaintiff *has* included in the Third Amended Complaint make clear that – aside from its primary use as a character in a font – whatever use Plaintiff does make of the Paris Pro Ampersand is as an ornamental design on a limited offering of apparel and accessories. (*See* TAC ¶ 24 ("Plaintiff Nadav sells merchandise, including jewelry and men's and women's apparel, prominently featuring the Paris Pro Ampersand."); TAC ¶ 25 (showing use of the Paris Pro Ampersand (i) as a pendant design on a necklace, (ii) as an artistic design on a poster, and (iii) as a large graphic design located front and center on a t-shirt).) As a matter of law, ornamental use fails to function as a trademark and to satisfy the basic requirements for protection. *See* 15 U.S.C. §§ 1051, 1052 & 1127.  In other words, "[s]ubject matter that is merely a decorative feature does not identify and distinguish the applicant's goods and, thus, does not function as a trademark." TMEP § 1202.03 (citing 15 U.S.C. §§ 1051, 1052 & 1127); *see also In re LS&S Retail, Inc.*, Consol. Ser. No. 77524535, 2010 WL 4036046, at *8 (T.T.A.B. Sept. 30, 2010) (affirming refusal to register trademark because "[t]he size, location, and dominance of applicant's proposed mark on the [front of the] t-shirt supports the conclusion that the proposed mark would serve an ornamental rather than a source-identifying function on the goods."); *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 977 F. Supp. 264, 267 (S.D.N.Y. 1997) (holding that plaintiff's "waffle trademark is not entitled to trademark protection" because "it is a

product design and is a mere decorative and ornamental feature of the goods that does not indicate source.").

The allegations in the Third Amended Complaint make clear that the Paris Pro Ampersand is nothing more than an ornamental design. Contrary to Plaintiff's barebones assertion that the Paris Pro Ampersand is "the centerpiece of Nadav's brand identity," Plaintiff's own allegations reveal that the design is featured in connection with Plaintiff's goods because Plaintiff believes the design to be a beautiful ornamentation – not an indication of source. (*See* TAC ¶ 24 (stating that apparel and accessories "*featur[e]* the Paris Pro Ampersand" (emphasis added) and showing a necklace with the Paris Pro Ampersand used as a design pendant).) This fact is further supported by a post on Plaintiff's Instagram page, which features twenty different ampersand designs (including the Paris Pro Ampersand) with the caption "one of my favorite things to do is to design new ampersands. I wish to make many ampersands in 2021. I'll upload the Hi-Res post to my blog soon. Don't miss it. :))," as shown below:



If Plaintiff truly purported to own trademark rights in the Paris Pro Ampersand (that is, as an exclusive identifier of source), Plaintiff would have included supporting allegations in the Third

9

Amended Complaint showing *trademark use* of the Paris Pro Ampersand – such as on the price tag/hang tag of apparel or jewelry, in the signature block of an artistic work like a poster, and on marketing materials like social media posts, brochures, and catalogues – to identify his company as the source of goods or services. Indeed, that Plaintiff does not consider the Paris Pro Ampersand to be a trademark is further evidenced by the fact that Plaintiff does not use a (TM) symbol in connection with its use of the Paris Pro Ampersand. (*See* TAC ¶ 25.) Such use would indicate to consumers – as well as competitors – that Plaintiff is claiming trademark rights in the Paris Pro Ampersand and that it intends to use the design as an indicator of source. *See In re LS&S Retail*, 2010 WL 4036046, at *9 (affirming refusal of registration, in part, based on finding that lack of a (TM) symbol "suggests that potential customers would not be conditioned to recognize applicant's proposed mark as a trademark.")

Because Plaintiff has failed to allege specific facts to support a claim that its Paris Pro Ampersand functions as a trademark, it cannot adequately plead the elements of unfair competition under New York common law. Thus, the Third Amended Complaint must be dismissed in its entirety.

      B.     <u>*Plaintiff Fails to Plead Specific Facts Indicating Bad Faith*</u>

Under Second Circuit precedent, "bad faith *must* be demonstrated for a claim of unfair competition under New York law." *Empresa Cubana del Tabaco*, 399 F.3d at 485 (emphasis added); *Pulse Creations*, 154 F. Supp. 3d at 57 ("[A] party asserting a claim for unfair competition under New York law must also allege bad faith on the part of the defendant."). This element is indispensable to a claim of unfair competition because "[t]he essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and

expenditures of another with some element of bad faith." *Universal Instruments*, 924 F.3d at 50-51 (internal quotation marks omitted).

The Third Amended Complaint lacks sufficient specific allegations to support a finding of bad faith for Plaintiff's unfair competition claim. While Plaintiff includes allegations that Defendant used the BR Ampersand Design "without Nadav's authorization" (TAC ¶¶ 22, 27, 31), it fails to identify any reason or basis as to *why* Defendant would need Plaintiff's authorization. Moreover, while Plaintiff includes conclusory statements asserting that Defendant "intentionally copied or caused to be copied the Paris Pro Ampersand" (TAC ¶¶ 39, 61), that such "copying of the Paris Pro Ampersand was willful," (TAC ¶ 40) and that it was "undertaken in bad faith" (TAC ¶¶ 47, 60-61), these statements are unsupported by any factual allegations and are substantially identical to the allegations asserted in the Second Amended Complaint, which the Court has already found to be insufficient and not entitled to a presumption of truth. (*See* Order at 6 ("Although Nadav pleads that Banana Republic acted in 'bad faith' by 'deliberate[ly] and/or intentional[ly] copying . . . the Paris Pro Ampersand,' it fails to support that conclusory assertion with any specific factual allegations.").)

Central to the Court's analysis in the Order was the fact that Plaintiff failed to "plausibly allege that [Defendant] was even aware of the existence of Nadav, the Paris Pro Ampersand, or the fact that Nadav had designed the Paris Pro Ampersand." (Order at 6.) Indeed, the Court found that "[w]ithout awareness of such facts, [Defendant] plainly could not have intentionally copied the design." (*Id.*) Plaintiff attempts to remedy the deficiencies in its prior pleading by adding two new allegations that Defendant had "actual or constructive knowledge of Plaintiff's Paris Pro Ampersand." (TAC ¶¶ 55-56.) These statements are devoid of any supporting factual allegations and are clearly added by Plaintiff in a conclusory fashion for the sole purpose of

overcoming Defendant's motion to dismiss. Even if the Court were to afford the allegations a presumption of truth – which it should not – the allegations remain deficient as a matter of law because prior knowledge is insufficient on its own to support a finding of bad faith. *See Easy Spirit, LLC v. Skechers U.S.A., Inc.*, 19-CV-3299, 2021 WL 247922, at *16 (S.D.N.Y. Jan. 26, 2021) ("[P]rior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith." (quoting *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 397 (2d Cir. 1995)); *E. R. Squibb & Sons, Inc. v. Cooper Labs., Inc.*, 536 F. Supp. 523, 532 (S.D.N.Y. 1982) ("[K]nowledge of prior use alone does not amount to a bad faith attempt to capitalize on the skill, expenditures, and labor of the first user."); *Mr. Water Heater Enters., Inc. v. 1-800-Hot Water Heater, LLC*, 648 F. Supp. 2d 576, 588 (S.D.N.Y. 2009) ("Nor is prior knowledge of a senior user's trade mark inconsistent with good faith.") (citation omitted). The law has settled in this manner because courts have recognized that a junior user should be legally entitled to use a senior user's protectable trademark in a descriptive sense regardless of whether the junior user had prior knowledge of the trademark. *See Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 270 (2d Cir. 1995) ("Car–Freshner bases its argument [of bad faith] primarily on the fact that Johnson adopted its tree shape with knowledge of Car–Freshener's use of the tree shape and without consulting counsel. There is no merit to this argument. As Johnson was fully entitled to use a pine-tree shape descriptively notwithstanding Car–Freshener's use of a tree shape as a mark, the fact that it did so without consulting counsel has no tendency to show bad faith."). Thus, where a plaintiff has failed to allege additional facts in connection with prior knowledge to support a finding of bad faith, courts have routinely dismissed unfair competition claims even where, unlike here, the plaintiff holds a valid trademark. *See Midwest Railcar Corp. v. Everest Railcar Servs., Inc.*, 16-CV-0604 (AKH), 2017 WL 1383765, at *8 (S.D.N.Y. Apr. 13, 2017)

12

(dismissing unfair competition claim for failure to allege bad faith and providing examples of allegations that would support bad faith, including: obtaining proprietary information "by using improper means" or using such information "for the specific purpose of injuring" the owner); *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 66 (2d Cir. 2000) ("[L]ack of good faith [is equated] with the subsequent user's intent to trade on the good will of the trademark holder by creating confusion as to source.").

Contrary to the conclusory allegations in the Third Amended Complaint, the examples provided by Plaintiff purportedly showing Defendant's use of the Paris Pro Ampersand actually support a finding of good faith. Notably, *every* example provided by Plaintiff demonstrates that Defendant uses its BANANA REPUBLIC house mark in close proximity to the BR Ampersand Design. (TAC ¶ 30.) Such use of a house mark has been found to support a finding of good faith. *See Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997) ("The non-trademark use of the challenged phrase and the defendants' good faith are both evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks."); *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 427 (S.D.N.Y. 2008) ("An indication of good faith is the display of defendant's own name or trademark in conjunction with the mark it allegedly infringes.") (citation and internal quotation marks omitted). Moreover, *every* exampled provided by Plaintiff demonstrates that Defendant uses the BR Ampersand Design solely in a descriptive, non-trademark fashion – that is, as an ampersand meaning "and." (TAC ¶ 30.) For example, the BR Ampersand Design is placed within Defendant's marketing materials to indicate to consumers that they may take "40% off" their purchase *and* an "extra 20% off" for selected items or that they may take "40% off" their purchase *and* this is a "special offer" for "today only." (*Id.*) This is further evidence of good

13

faith. *See Radio Channel Networks, Inc. v. Broadcast.Com, Inc.*, 98-CV-4799 (RPP), 1999 WL 124455, at *5 (S.D.N.Y. Mar. 8, 1999), *aff'd*, 201 F.3d 432 (2d Cir. 1999) ("A defendant which knowingly uses words in which another claims a trademark right will not be found to have acted in bad faith if it believes it is using the challenged words in their descriptive sense.").

Because Plaintiff has failed to state plausible, legally supportable allegations of bad faith in connection with its unfair competition claim, the Third Amended Complaint must be dismissed in its entirety.

## II. Plaintiff's Claim Is Preempted by the Copyright Act

As an independent basis for dismissal, Plaintiff's unfair competition claim is preempted by the Copyright Act, 17 U.S.C. § 101 *et seq*. Section 301 thereof preempts state common law or statutory rights with respect to content that falls within the subject matter of copyright. *See* 17 U.S.C. § 301. "The test for preemption involves two inquiries: 1) is the work in question within the subject matter of copyright as defined in 17 U.S.C. §§ 102, 103, and 2) is the state law created right equivalent to any of the exclusive rights within the general scope of copyright as specified by 17 U.S.C. § 106." *Universal City Studios, Inc. v. Nintendo Co.*, 615 F. Supp. 838, 856-57 (S.D.N.Y. 1985), *aff'd*, 797 F.2d 70 (2d Cir. 1986).

With respect to the first prong of the test for preemption, typefaces are "within the subject matter of copyright" because the regulations supporting the Copyright Act explicitly exclude from protection both fonts and typefaces. *See* 37 C.F.R. § 202.1(a), (e) (excluding from copyright protection both "mere variations of typographic ornamentation" and "typeface."). Plaintiff's Paris Pro Typeface and Paris Pro Ampersand are both "mere variations of typographic ornamentation or lettering" and are therefore not protectable under the Copyright Act. Notably, courts have interpreted Section 301 to cover subject matter broader than what is actually given

protection because permitting states to protect content for which federal copyright protection was precluded would "expand significantly the reach of state claims and render the preemption intended by Congress unworkable." *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 849 (2d Cir. 1997); *see also ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996) ("One function of § 301(a) is to prevent states from giving special protection to works of authorship that Congress has decided should be in the public domain, which it can accomplish only if 'subject matter of copyright' includes all works of a *type* covered by section 102 and 103, even if federal law does not afford protection to them.") (emphasis in original). As a result, typefaces are within the subject matter of the Copyright Act despite not receiving any protection thereunder.

As to the second prong of the preemption test, it is well-settled that Plaintiff's common law claim for unfair competition is "equivalent" to a copyright infringement claim based on the exclusive rights guaranteed under the Copyright Act. Indeed, courts in this circuit have regularly dismissed state law unfair competition claims as being preempted by the Copyright Act when such claims are based solely on copying. *See, e.g.*, *Franklin v. X Gear 101, LLC*, 17-CV-6452 (GBD)(GWG), 2018 WL 3528731, at *15 (S.D.N.Y. July 23, 2018), report and recommendation adopted, 2018 WL 4103492 (S.D.N.Y. Aug. 28, 2018) ("Common law trademark infringement claims and unfair competition claims may be preempted where the claims are grounded solely in the copying of a plaintiff's protected expression. Put another way, if the harm arises from the simple fact of copying, the claim falls within the Copyright Act and is preempted." (internal citations and quotation marks omitted)); *Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F. Supp. 2d 441, 447-49 (S.D.N.Y. 2011) (finding unfair competition claim to be "preempted" because the plaintiff "has alleged harms arising only from [the defendant's] alleged copying of its design, and thus asserts only a harm squarely covered by federal copyright law."); *Maurizio v.*

15

*Goldsmith*, 96-CV-4332 (LMM), 2001 WL 1568428, at *6 (S.D.N.Y. Dec. 5, 2001) ("[C]ourts have found that because a claim for common law unfair competition requires no extra element beyond a copyright infringement claim, it is preempted by federal law.")

Because Plaintiff seeks redress based on its purported exclusive rights to distribute and license the Paris Pro Typeface (including the Paris Pro Ampersand), Plaintiff's unfair competition claim is functionally equivalent to and not qualitatively different from a claim for copyright infringement under the Copyright Act. Accordingly, the Copyright Act preempts Plaintiff's claim and the Third Amended Complaint should be dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, the Third Amended Complaint cannot withstand this motion to dismiss. The claim set out therein is unsupported by factual allegations necessary for a proper pleading and is preempted in any event. Accordingly, Defendant respectfully requests that the Court grant its motion to dismiss the Third Amended Complaint in its entirety.

Dated: New York, New York  
       July 22, 2021

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____  
James D. Weinberger (*jweinberger@fzlz.com*)  
Daniel M. Nuzzaci (*dnuzzaci@fzlz.com*)  
151 West 42nd Street, 17th Floor  
New York, New York 10036  
Tel: (212) 813-5900

*Attorneys for Defendant Banana Republic, LLC*